IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY D.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:20cv556 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Anthony D. ("Anthony") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Anthony had previously sought judicial review of a final decision denying his claim for disability benefits and this court remanded his case to the Commissioner for further administrative proceedings. Anthony alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) assess his mental impairments; (2) determine his RFC using a function-by-function analysis; and (3) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Summary Judgment (Dkt. 21) and **DENYING** Anthony's Motion for Summary Judgment (Dkt. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Anthony failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## **CLAIM HISTORY**

Anthony filed for SSI in May 2013, claiming that his disability began on April 1, 2013, due to conversion disorder/pacemaker and anxiety.[4] R. 246, 274, 1961. In July 2017, after holding a hearing, ALJ John Dawkins issued an unfavorable ruling denying Anthony's claim. R. 21–45. The Appeals Council denied Anthony's request for review and Anthony filed a civil action in this court challenging that decision. See Anthony D. v. Commissioner, Case No. 7:18cv346. This court reversed the Commissioner's decision and remanded Anthony's case for further administrative proceedings on August 20, 2019. The Appeals Council then vacated ALJ Dawkins' decision and sent the case to ALJ David S. Lewandowksi for rehearing. R. 2077.

ALJ Lewandowski held a hearing in March 2020. Counsel represented Anthony at the hearing, which included testimony from vocational expert Mark Hileman. The ALJ issued a second unfavorable decision on May 19, 2020, analyzing Anthony's claims under the familiar five-step process[5] and denying his claim for benefits. R. 1959–75. The ALJ found that Anthony suffered from the severe impairments of sick sinus syndrome with AICD placement, mitral valve regurgitation, asthma, low back pain with radiculopathy, right knee pain and transient synovitis,

---

[4] Anthony was 21 years old on the date his application was filed and 28 years old on the date of the ALJ's opinion, making him a younger person under the Act. R. 1973.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

depression, and anxiety.[6] R. 1961. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 1962. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 1.04 (spinal disorders), listing 3.03 (asthma), listing 4.00Ac3 (for his arrhythmias), listing 12.04 (depressive, bipolar, and related disorders), and listing 12.06 (anxiety and obsessive-compulsive disorders). R. 1962–63. The ALJ found that regarding his mental impairments, Anthony had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 1963–64.

The ALJ concluded that Anthony retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 1965. Specifically, Anthony can only occasionally perform postural activities, and can never crawl, climb ladders, ropes, or scaffolds, or perform overhead reaching. R. 1965–66. Anthony should avoid exposure to temperature extremes, wetness, humidity, pulmonary irritants, and industrial hazards. Anthony can understand, remember, and carry out simple instructions and perform simple, routine tasks, and have occasional interaction with coworkers or supervisors, but no interaction with the public. He can adapt to occasional changes in the customary workplace setting, but cannot perform fast-paced work, meaning work requiring rapid movement with a high productivity level, tight deadlines, or quick turnaround, such as in assembly work or a server at a crowded restaurant. Anthony is expected to be off task ten percent of the day. R. 1966. The ALJ determined that Anthony was unable to perform his past relevant work as a short order cook, fast food worker, and CNA, but that he could perform jobs that exist in significant numbers in the national economy, such as

---

[6] The ALJ also found non-severe impairments of headaches, nearsightedness, gastroesophageal reflux disease, long QT, hepatic fibrosis, left foot pain, cholecystectomy, substance abuse in remission, and gender dysphoria status-post gender reassignment. R. 1961–62.

addressing clerk, stuffer, and printed circuit board touch-up screener. R. 1973–74. Thus, the ALJ determined that Anthony was not disabled. R. 1974. Anthony filed for direct review of the unfavorable decision in this court.[7] See 20 C.F.R. § 404.984(d); Massey v. Saul, No. 1:19 CV 152 WCM, 2020 WL 4569606, at *1 (W.D.N.C. Aug. 7, 2020) (noting that "When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case").

## ANALYSIS

Anthony alleges that the ALJ failed to properly assess his mental impairments, determine his RFC using a function-by-function analysis, and assess his allegations regarding his symptoms.

### A. Medical History Overview

Anthony had treatment for mental health issues, including hospitalization, within the relevant period.[8] In July 2013, his primary care physician noted Anthony's psychiatric issues were "uncontrolled," and scheduled a psychiatry evaluation. R. 547. In September 2013, Anthony was diagnosed with conversion disorder and gender identity disorder. R. 800. In May 2017, Anthony presented to New River Valley Community Services to establish mental health care, primarily complaining of a conversion disorder, where he is unable to move, speak, or

---

[7] The Notice of Decision – Unfavorable, dated May 19, 2020, from the ALJ states:

If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action within the [time period provided].

R. 1946-58.

[8] In the argument section of his brief, Anthony focuses mostly on alleged errors related to his mental impairments, and thus, I likewise focus on these issues in this medical overview. Anthony does generally reference his physical impairments in arguing "he cannot maintain a static work posture," (Pl.'s Br. at 37, Dkt. No. 17), as well as in arguments related to the ALJ's assessment of his allegations, including Anthony's pain and fatigue, which I address later in this Report and Recommendation.

function. R. 2694. His mental status exam was generally normal, and he was assessed with post-traumatic stress disorder, with a rule out of conversion disorder. R. 2697, 2702. Anthony was hospitalized in June and October 2017 for suicidal ideations, and in January 2018 for threatening his girlfriend with a knife. R. 2709, 2712, 2394, 2429. On initial hospitalization in June 2017, it appeared Anthony had overdosed; however, on testing his BAC was .098 and negative for substances, and the attending physician did not believe that was the case. R. 2712. Anthony later agreed with his therapist that the June 2017 incident "may have been an attempt at attention," and likewise, regarding the October 2017 hospitalization, he later reported to his therapist that he was not trying to commit suicide. R. 2732, 2890. Throughout this period Anthony continued to follow up with therapy appointments at New River Valley Community Services, with eye tics noted, including frequent blinking, as well as stress and anxiety, but otherwise generally unremarkable examinations. R. 2291, 2741, 2749, 2792, 2843. By May 2018, Anthony indicated he was taking care of his new baby, and again had a generally normal mental status exam, with continued frequent eye blinking. R. 3052. Anthony had similarly unremarkable follow-up appointments into 2019, until November 2019, when he was admitted to the hospital after his wife found him unresponsive. R. 2361. He was assessed with conversion disorder and malingering, and his request to be discharged with an in-home caregiver was refused, with the doctor noting that "he has no muscle atrophy, no contractures, and he was seen to move his legs when he did not know that he was being observed."[9] R. 2377.

---

[9] Anthony's catatonia was also assessed as "? malingering" near the beginning of the relevant period, in August 2013, when during a hospitalization the doctor noted that he walked to the bathroom himself on multiple occasions, but when the doctor was present would not "respond to his voice" or other stimuli. R 660, 672.

1. <u>Medical Opinion Evidence</u>

In August 2014, Anthony underwent a psychological consultative examination by Bruce Sellars, Psy.D. R. 854–57. Dr. Sellars diagnosed him with conversion disorder with motor symptom or deficit, gender identity disorder, alcohol abuse, and possible PTSD. R. 856. Dr. Sellars found that Anthony would be able to perform simple and repetitive tasks, and possibly even detailed and complex tasks, and would be able to work well with supervisors, co-workers, and the general public. However, Dr. Sellars questioned whether Anthony would reliably go to a job, due to "a number of absences" from his previous jobs, as well as whether he could manage stress "without having a physical/somatic reaction." R. 856. The ALJ gave significant weight to Dr. Sellars' opinion to the extent that he found Anthony capable of performing simple, repetitive tasks, but determined that the remainder, including his stress tolerance and job reliability opinions, were speculative. R. 1971.

In 2014 and 2015, respectively, state agency doctors Eric Oritt, Ph.D. and Linda Dougherty, Ph.D., reviewed the record and determined that Anthony had moderate difficulties in maintaining social functioning and concentration, persistence, or pace, mild restriction in activities of daily living, and had one or two episodes of decompensation. Both doctors indicated he "should be able to perform simple, unskilled work." R. 116, 136.

**B. Mental Impairments under SSR 96-8P**

Anthony argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P.  See <u>Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims</u>, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Anthony asserts that the ALJ did not provide a function-by-function analysis or a narrative discussion regarding his conclusion that his RFC findings account for plaintiff's moderate limitations in concentration, persistence, or pace and

7

interacting with others, and failed to explain his conclusion that Anthony would be off task 10% of the workday and could sustain work over an eight-hour workday. Pl.'s Br. at 28–30, Dkt. 17.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or

8

pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Anthony is capable of performing the basic mental demands of sedentary work, with the specified accommodations. Further, here, the ALJ explained why Anthony's moderate limitations in concentration, persistence, or pace, and interacting with others did not translate into a limitation in the RFC beyond that imposed.[10]

Contrary to Anthony's arguments, the ALJ explained his reasoning and the RFC in detail, including specific references to the medical records and opinions. Regarding Anthony's moderate impairments in concentration, persistence, or pace, the ALJ adequately explained the RFC, including the percentage off task. In contradiction to Anthony's claim that the RFC addresses only skill level and not an ability to stay on task, the ALJ also specifically wrote that

---

[10] Anthony also argues that the ALJ failed to provide appropriate questions to the vocational expert. However, the ALJ's hypothetical questions were clear and with support in the record. At bottom, I find the ALJ's RFC findings were supported by substantial evidence and the ALJ presented an appropriate question to the vocational expert.

9

the area of concentration, persistence, or pace concerns the ability to "stay on task at a sustained rate" and the "ability to work a full day without needing more than the allotted number or length of rest periods customarily provided." R. 1964. The ALJ acknowledged Anthony's complaints of concentration issues and problems with task completion, especially when under stress, but noted that Anthony generally did not complain of serious difficulty with concentration, persistence, or pace to his treating doctors, who did not observe him to be overly distractable or slow. R. 1964. The ALJ reasoned that Anthony was able to complete serial 7s and other simple calculations, watched television for pleasure, cared for a baby, and drove a car for Uber.[11] R. 1964. The ALJ emphasized that Anthony was capable of handling the mental demands of parenting a baby, although it did cause some stress. R. 1965. The ALJ explained that Anthony should be limited to simple instructions and tasks, and no fast-paced tasks, and that his limitations would also cause him to be off task ten percent of the workday. R. 1964–65. The ALJ further explained that he "included limitations in terms of time off task and a preclusion from fast-paced work" based on Anthony's complaints of issues with task completion and difficulty dealing with stress and changes. R. 1971. This is likewise supported by the opinion of the state agency doctors, who found Anthony "should be able to perform simple, unskilled work" (R. 116, 136) as well as by Dr. Sellars, who found Anthony would be able to perform simple and repetitive tasks, and possibly even detailed and complex tasks. R. 854–57.

In this vein, contrary to Anthony's complaint that the ALJ did not adequately explain how he weighed Dr. Sellars' opinion, the ALJ explained that he gave significant weight to Dr. Sellars' opinion that Anthony could perform simple, repetitive tasks, but found Dr. Sellars'

---

[11] For example, his therapy records indicate he worked about 30 hours a week for Uber for four months. R. 2884.

opinions about stress tolerance and job reliability speculative. Indeed, Dr. Sellar's phrasing was somewhat theoretical, as he wrote:

> There seemed to be a question of would [Anthony] be able to reliably go to a job as he had a number of absences from previous jobs in the past. There is also a question if he could manage stress without having a physical/somatic reaction to stress. It appeared that, based on his history, this would be difficult.

R. 856. However, beyond that, the ALJ considered all the evidence that Anthony contends documents his difficulty handling stress, his hospitalizations, conversion disorder, depression, anxiety, and suicidal and homicidal behavior, and included accommodations in the RFC. Additionally, the ALJ specifically clarified that "there are no persuasive opinions in the record that suggest greater" limitations than those included in the RFC. R. 1971.

Regarding interacting with others, the ALJ explained that Anthony generally interacted normally with his treating providers, who "often noted [he] was pleasant, cooperative, and in no distress" expect for a "few exceptions when [he] was intoxicated or under the influence." R. 1964. Anthony was also able to go out in public, including for shopping and as an Uber driver. R. 1964. The ALJ acknowledged Anthony's report of "intermittent issues dealing with others" but explained that he was able to work intermittently and had friends. R. 1971. Accordingly, the ALJ precluded interaction with the public, and limited Anthony to occasional interaction with coworkers and supervisors. R. 1964, 1966. This outcome is also supported by Dr. Sellars, who found Anthony would be able to work well with supervisors, co-workers, and the general public. R. 854–57. Likewise, the Commissioner points out that Anthony both "specifically denied that any employer said he had the inability to get along with others" and testified that no employer had "fired or laid [him] off . . . because of problems getting along with other people." R. 80.

**C. Physical RFC and Function-by-Function Analysis**

Anthony argues that the ALJ's physical RFC findings are not supported by substantial evidence, specifically regarding his "inability to maintain a static work posture or the need to lie down during the day." Pl.'s Br. at 37, Dkt. 17. Problematically, Anthony fails to point to any specific evidence in support of these claims; instead, Anthony points only to his own testimony at the 2017 and 2020 hearings. Accordingly, this disagreement with the ALJ's RFC determination is not based in medical records or opinions. Furthermore, even if Anthony cited to records to support his claims that he cannot maintain a static work posture, or that he has to lie down during the day, I would still apply the standard of substantial evidence to this case, and consider the record as a whole. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). However, as the Commissioner points out, Anthony had generally normal physical findings on examination, including full strength, and normal gait and posture. D.'s Br. at 16, Dkt. 22.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Anthony's medical records, the medical opinions, Anthony's hearing testimony, and the ALJ's conclusions. The ALJ acknowledged in his opinion Anthony's testimony at the hearing that he was fatigued and took one or two naps a day and could stand for only thirty minutes before his body began to ache. R. 1967. However, the ALJ explained that a limitation to sedentary work would accommodate Anthony's severe S1 radiculopathy and right knee pain, as well as periodic dizziness and also emphasized that Anthony's subjective complaints are not supported by the objective medical findings in the record. R. 1972.

Accordingly, I recommend finding that substantial evidence supports the ALJ's RFC determination.

### D. Subjective Allegations

Anthony argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Anthony asserts the ALJ "improperly discounted [his] subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating his statements." Pl.'s Br. at 39, Dkt. 17. Anthony, relying on Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 96 (4th Cir. 2020), asserts that the ALJ "improperly increased [his] burden of proof by requiring his subjective descriptions of his symptoms to be supported by objective medical evidence." Pl.'s Br. at 40, Dkt. 17.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[12] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[13] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the

---

[12] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[13] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

      The ALJ's opinion includes an extensive discussion of Anthony's medical history and treatment, as well as Anthony's allegations, and the ALJ adequately supported his finding that Anthony's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ concluded that Anthony's "subjective complaints are out of proportion with the weak and inconsistent objective medical findings contained in the record." R. 1972. Contrary to Anthony's argument that the ALJ improperly required his subjective symptoms to be supported by objective evidence, the ALJ, in fact, properly discounted Anthony's allegations because the inconsistent objective medical findings do not corroborate his allegations. This is contemplated by the Regulations which state that, in evaluating a claimant's symptoms, an ALJ should examine the entire case record, which includes the objective medical evidence, along with other relevant evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c).

      In Arakas, the Fourth Circuit emphasized that the ALJ "effectively required 'objective' evidence for a disease [fibromyalgia] that eludes such measurement," despite having a note from the plaintiff's doctor emphasizing that fibromyalgia typically does not produce clinical and laboratory abnormalities. Arakas, 983 F.3d at 96. Arakas bears little similarity to Anthony's

15

situation, where Anthony does not have fibromyalgia, and the ALJ here relies on objective medical findings that contradict his allegations. In support, the ALJ writes:

> The medical records do not support consistent multi-joint inflammation, indicated by joint selling stiffness, redness and/or warmth. [Anthony] has not exhibited any significant loss of range of motion . . . there is no evidence of reduced grip strength in the hands, loss of color in the allegedly affected reasons, muscle spasm with examination, or muscle atrophy.[14] The medical records also do not contain notes that [Anthony] exhibits difficulty initiating movement, difficulty moving generally, or muscle tremors. However, a recent EMG shows severe S1 radiculopathy, which would limit him to sedentary work [which] also accounts for any right knee pain.

R. 1972.

Further, the ALJ reasonably discounted the third party function reports provided by Anthony's mother and fiancé. The ALJ explained that he gave no weight to these function reports because, "it is unclear if the opinions are based on independent observation, as opposed to subjection reports by [Anthony and] . . . the reports are not consistent with the evidence or the fact that [Anthony] has intermittently worked since 2016." R. 1972. The ALJ's evaluation complies with the Regulations, which provide that when considering opinions from "non-medical sources" including "spouses, parents, friends, and neighbors," the ALJ should consider "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p; see also Arnold v. Berryhill, No. 3:18-cv-391, 2019 WL 2883815, at *6 (W.D.N.C. June 12, 2019), adopted sub nom. Arnold v. Saul, 2019 WL 2881548 (W.D.N.C. July 2, 2019) (finding the ALJ properly considered a third party function report satisfactory where, the ALJ "gave the report 'little

---

[14] Anthony argues that these are "not findings associated with [his] severe impairments" and the ALJ does not explain how "lack of these findings undermine [his] allegations." Pl.'s Br. at 40, Dkt. 17. Even if this portion is a misstatement however, any error is harmless, as the ALJ discussed the medical findings and evidence at length elsewhere in the opinion, which do support the ALJ's consideration of Anthony's allegations, overall.

16

weight' due to its inconsistency with the objective medical evidence and medical opinions in the record").

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Anthony's subjective complaints with substantial evidence, and that Anthony is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to James P. Jones, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court

as a waiver of such objection, including the waiver of the right to appeal.

                                                Entered: December 8, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge